**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DEBRA PIPPINS**                                                                 **PLAINTIFF**

**VS.**                                                          **CAUSE NO.** 3:18-cv-541-HTW-LRA

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;**
**MARSHALL FISHER, CHAIRMAN OF THE**
**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY; AND**
**JAMES WALKER, INDIVIDUALLY AND IN HIS OFFICIAL**
**CAPACITY**                                                              **DEFENDANTS**

<u>**COMPLAINT**</u>

<u>**JURY TRIAL REQUESTED**</u>

  **COMES NOW** the Plaintiff herein, **DEBRA PIPPINS,** (hereinafter referred to as "Plaintiff Pippins"), by and through counsel, and files this "Complaint" against the **MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY,** an Agency of the State of Mississippi (hereinafter referred to as "Defendant MDPS", "MDPS" or "the Agency"), **MARSHALL L. FISHER, CHAIRMAN OF THE MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY,** (hereinafter referred to as "Defendant Fisher"), and **J**AMES WALKER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY (**hereinafter referred to as "Defendant Walker")** and in support thereof, Plaintiff Pippin would show unto the Court the following, to-wit:

<u>**INTRODUCTION**</u>

  1. Plaintiff Pippins charges Defendant MDPS with unlawful employment practices on the basis of retaliation in violation of *42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights*

1

*Act of 1964, as amended* (hereinafter "Title VII"); and Plaintiff Pippins brings claims under 42 U.S.C. Section 1983 for the intentional discrimination and retaliation against Defendant Walker in violation of the Equal Protection Clause of the Fourteenth Amendment.

2.      Plaintiff Pippins filed a Charge of Discrimination and Retaliation with the U.S. Equal Opportunity Commission ("EEOC") on or about September 20, 2017, against the Defendant, MDPS, regarding her retaliation in the workplace. After the initial Charge, Plaintiff Pippins was subjected to further acts of retaliation by the Defendants MDPS and Walker from and after the filing of the Charge on a continuous basis up until the filing of this civil action.

3.      Plaintiff Pippins was issued a "Right to Sue" the U.S. Equal Employment Opportunity Commission ("EEOC") dated May 17, 2018 in regard to her pending Charge before the EEOC.  Plaintiff Pippins is filing this action in a timely manner following her receipt of the "Right to Sue" issued by the EEOC for the retaliation and reprisal that she has been subjected to as a result of having complained about her treatment and after having engaged in a protected activity under Title VII.   The Notice of Right to Sue received from the EEOC is attached hereto marked **Exhibit "A"** and incorporated herein by reference.

4.      Plaintiff Pippins is a Project Officer II with the Defendant MDPS.  Plaintiff Pippins has been in that position for a number of years. Plaintiff Pippins despite her unlawful treatment in the workplace, continues to be a long time dedicated employee of the Defendant MDPS and she is seeking relief from this Court in this action.  Plaintiff Pippins seeks, *inter alia*, for her employer and officials of the Defendant MDPS to comply with federal law; not to cause her to have to work in a hostile work environment and not to retaliate against its employees for engaging in protected activities under Title VII.

5.      Plaintiff Pippins is seeking this Court to enjoin Defendants MDPS, et al from engaging in discrimination and retaliation in the workplace; and to enjoin the Defendant MDPS and its officials from engaging in unlawful employment practices in violation of Title VII and federal law.

6.      Defendant MDPS and its management team members such as Defendant Walker should be enjoined "from engaging in this disparate treatment" within the Agency because Plaintiff Pippins having protested her working conditions that were severe and pervasive and violates her constitutional rights.

7.      Plaintiff Pippins claims that she received different treatment than that received by similarly situated individuals; that she was "singled out" by officials of the MDPS as a result of her protesting her working conditions; and that she was subjected to unequal treatment stemming from her protesting her unlawful treatment in the workplace.  Plaintiff Pippins seeks an injunction prohibiting this unequal treatment.  *Taylor v. Johnson, 257 F. 3d 470, 473 (5th Cir. 2001).*

8.      Management of the Defendant MDPS including Defendant Fisher and Defendant Walker should be ordered and directed to comply with federal law so as to not discriminate and retaliate against employees that engage in a protected activity in the workplace.  Defendants Fisher and Walker knew of the prior complaints and grievances of Plaintiff Pippins and were complicit in her requests for relief and assistance for the hostile work environment in the workplace at the MDPS.

9.      Defendant MDPS failed to protect Plaintiff Pippins from conduct that would dissuade a reasonable employee from bringing a grievance or charge of discrimination or retaliation.

10.     Defendant Fisher and Defendant Walker are being sued in their official capacity in this action under 42 U.S.C. Section 1983.

11.     Defendant Walker was personally involved in the constitutional violations and his actions were causally connected to the constitutional violation– the result of which was Plaintiff Pippins denial of equal protection as guaranteed by the United States Constitution; and for First Amendment retaliation - under Section 1983. *Jabary v. City of Allen, 547 Fed. Appx. 600, 2013 U.S. App. LEXIS 23628 (5th Cir. 2013); Jones v. Lowndes County, Miss., 678 F.3d 344, 349 (5th Cir. 2012) (quoting James v. Texas Collin County, 535 F.3d 365, 373 (5th Cir. 2008); and Moore v. Huse, 578 Fed. Appx. 334, 2014 U.S. App. LEXIS 15223 (5th Cir. 2014) (First Amendment Retaliation). Training*

12.     Defendant Walker subjected Plaintiff Pippins to "adverse employment action" as a result of her engaging in a protected activity – filing a grievance and filing a charge of retaliation with the EEOC.  Defendant Walker took adverse action against Plaintiff Pippins because of her having engaged in the protesting of her unequal treatment under Title VII and the Equal Protection Clause of the United States Constitution.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471 (1977).*

13.     Plaintiff Pippins is asserting a claim against Defendant Walker individually and personally for retaliatory conduct under 42 U.S.C. Section 1983.  *Johnson v. Brown, 2010 U.S. Dist. LEXIS 142207 (N.D. N.Y. 2010).*

14.     Defendant Walker intentionally discriminated against Plaintiff Pippins and retaliated against her for engaging in a protected activity for opposing the discriminatory and retaliatory treatment in the workplace; and he made the working conditions of Plaintiff Pippins intolerable for her protesting his prohibited acts in the workplace.

15.     Plaintiff Pippins is charging the Defendants MDPS, et al with retaliation against her for filing a Charge with the EEOC in September 2017, and for violation of the Equal Protection Clause and First Amendment rights of Plaintiff Pippins. *Sir Williams v. Bramer, 180 F. 3d 699, 705 (5th Cir. 1999); and Carpenter v. Miss. Valley State Univ., 807 F. Supp. 2d 570 (N.D. Miss. 2011); and Grimm v. Borough of Norristown, 226 F. Supp. 2d 606, 2002 U.S. Dist. LEXIS 3954 (E.D. Pa. 2002).*

16.     Defendant Fisher is not being sued in his individual capacity in this action, however, Plaintiff Pippins is seeking injunctive relief from this Court.  State officials such as Defendant Fisher when being sued in his or her official capacity for injunctive relief, are persons under Section 1983 because "official- capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989)* (explaining that while "state officials literally are persons…., a suit against the official in his or her official capacity is not a suit against the officials but rather a suit against the officer's office.").

## JURISDICTION

17.     Plaintiff Pippins brings her claims that arise under *42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964, as amended*, for retaliation and reprisal in the workplace in retaliation in violation of Title VII; and claims arise under 42 U.S.C. Section 1983 for denial of equal protection under the Fourteenth Amendment to the United States Constitution and for retaliation in violation of the First Amendment of the United States Constitution, as alleged herein.  Jurisdiction of this Court over Plaintiffs' claims is based on *42 U.S.C. § 2000e-5; 28 U.S.C. § 1331; and 28 U.S.C. § 1343*.  Plaintiffs' claims for declaratory relief arise under *28 U.S.C. § 2201 and § 2202*.

5

## PARTIES

18.     Plaintiff Debra Pippins ("Pippins") is an adult resident citizen of Rankin County, Mississippi, residing at her home address of 307 Willow Run Drive, Pearl, Mississippi 39208. Plaintiff Pippins is an employee of the Defendant Mississippi Department of Public Safety.

19.     Defendant *Mississippi Department of Public Safety* ("MDPS") is an agency of the State of Mississippi and may be served with process of this Court by serving the agent for service of process as follows:  *Honorable Jim Hood*, Attorney General, Mississippi Attorney General's Office, Walter Siller Building, 550 High Street, Suite 1200, Jackson Mississippi.

20.     Defendant *Marshall L. Fisher*, is the Chairman and Commissioner of the Defendant Mississippi Department of Public Safety; and he may be served with process at his business address of the Department of Public Safety Headquarters, 1900 East Woodrow Wilson Drive, Jackson, Mississippi.

21.     Defendant *James Walker*, is employed with the Defendant Mississippi Department of Public Safety; and Walker is the Director of the MHSP and he may be served with process at his business address of the Department of Public Safety Headquarters, 1900 East Woodrow Wilson Drive, Jackson, Mississippi.

22.     At all material times and during the acts alleged herein, Defendants MDPS acted by and through their designees and agents named herein, and that at all material times alleged herein, Defendant Walker acted with deliberately indifferent to Plaintiff Pippins discrimination and retaliation in the workplace as well as *post* grievance and *post* charge retaliation that continues to this date.

23.     At all material times Defendant Walker was personally involved in the violations, *infra*, and Defendant Walker was the constitutional wrongdoer; and the MDPS allowed the retaliation to continue after Plaintiff Pippins filing of her internal grievance and charge of retaliation with the EEOC in September 2017.

24.     At all material times and during the acts alleged herein, Defendant Walker had knowledge of the protected activity of Plaintiff Pippins in that she filed she filed a grievance over her treatment and filed a Charge with the EEOC over her retaliation and reprisal by the MDPS. Defendants MDPS and Walker were deliberately indifferent to Plaintiff Pippins' protection from retaliation and reprisal for engaging in a protected activity under Title VII; and this retaliation gives rise to a claim under 42 U.S.C. Section 1983 against Defendant Walker.

25.     At all material times and during the acts alleged herein, Defendant Walker engaged in conduct that "set the wheels into motion" that lead to the violation of the constitutionally protected rights of Plaintiff Pippins as alleged herein; and Defendant Walker is personally liable for their own acts and conduct as alleged herein that violated the Equal Protection Clause under the Fourteenth Amendment and for First Amendment retaliation, *infra*.

26.     Plaintiff Pippins would show that under the Equal Protection Clause, she has the right to be free from intentional discrimination.  Plaintiff Pippins also engaged in a protected activity under the First Amendment and she was retaliated against by Defendant Walker.  As a result, the actions of Defendants MDPS and Walker gives rise to liability under 42 U.S.C. Section 1983 for violation of Plaintiff Pippins right to equal protection guaranteed and provided for under the United States Constitution; and for First Amendment retaliation, *infra*.

**FACTS**

27.     Plaintiff Pippins is an African American female is making claim against her employer, Mississippi Department of Public Safety (hereinafter referred to as the "**MDPS**"), under Title VII of the Civil Rights Act of 1964 as amended ("**Title VII**"), for retaliation in violation of Title VII.

28.     Plaintiff Pippins began her employment with MDPS in December 1987 and she currently holds the position of Project Officer II.  As a Project Officer II, her duties include administrative and supervisory work in planning and directing the special project of the MDPS or "the Agency."  Plaintiff Pippins at all material times reported to Defendant Walker.  Plaintiff Pippins began being supervised on October 1, 2015 by Defendant Walker.

29.     During October 2015, Defendant Walker began reducing the duties and job assignments of Plaintiff Pippins. Plaintiff Pippins "sat in an office" after her change of supervision.  Plaintiff Pippins would show that Agency work normally performed by her was assigned to other employees of the Defendant, MDPS.

30.     Plaintiff Pippins complained to management and met with former Commissioner of the Defendant MDPS, Albert Santa Cruz.  Former Commissioner Santa Cruz requested Plaintiff Pippins to meet with the Director of Internal Affairs of the Defendant MDPS, Darren Freeman and report her unlawful treatment.  As a result of the meeting with Mr. Freeman, he told Plaintiff Pippins that he would get back with her, but he never did.

31.     Plaintiff Pippins openly complained about her treatment to management but those efforts were to no avail. Afterwards, Plaintiff Pippins faced retaliation and reprisal for protesting her unlawful treatment that included a reduction of her job duties and assignments, failure to be

evaluated after October 2015, assignment to switchboard duties, and no formal changes in duties and responsibilities in accordance with the General Orders of the MDPS.

32.     Plaintiff Pippins complained about her treatment since the reporting of the sexual harassment claim by a member of management.  Management of the Defendant, MDPS was aware of her prior complaints and had meetings with her about the matter.  In early 2017, Plaintiff Pippins started being sent by Defendant Walker to the switchboard (answering the telephone) to cover the lunch hour.

33.     Plaintiff Pippins would show that switchboard duties were delegated to a third party by the Defendant MDPS; and that those staff that answered the telephone and worked at the switchboard were not similarly situated to her and were not employees of the MDPS.  With the demotion in duties and responsibilities by Defendant Walker, Plaintiff Pippins was not only denied advancement but her pay and benefits were being reduced by her lack of overtime, loss of "comp time" and thus a loss of PERS retirement benefits.

34.     On or about May 17, 2017, Defendant Walker assigned Plaintiff Pippins to the switchboard (answering the telephone) Monday-Friday, 8:00 a.m. – 5:00 p.m.  During this time period, Plaintiff Pippins was ordered and directed to do as she was told by Defendant Walker.  Her protests regarding this treatment and reduction of her job duties were again to no avail.  This was a *significan*t reduction of the duties and responsibilities of a Project Officer II.

35.     Plaintiff Pippins met on or about July 19, 2017, with Defendant MDPS's Joseph Naegel, with Emergency Management, in regard to the "switchboard duties" and Naegel explained to her that he was not responsible for the assignment of the switchboard duties.   In response, Defendant Walker called Plaintiff Pippins into the office and told her that "he could send her to

anywhere he wanted to" with the Agency and he could assign her to "whatever duties" he wanted her to perform.

36.     On or about August 31, 2017, Plaintiff Pippen was told by Defendant Walker that she was to be ***underline_permanently assigned*** to the switchboard (answering the telephone full time) and that she complained to Defendant Walker for this action.  Plaintiff Pippin believed that she was being treated differently and retaliated against by Defendant Walker; and that other members of management told her that it was Defendant Walker's decision for the permanent assignment to switchboard duties.   This action by Defendant Walker was a reassignment with significant different responsibilities and was a significant change in the employment status of Plaintiff Pippins.

37.     On or about August 31, 2017, Plaintiff Pippins complained to Defendant Walker in regard to her treatment and her reduction of job duties (and the assignment to the "switchboard") and she told Defendant Walker that she would be filing a grievance and that she was also filing a complaint with the U.S. Equal Employment Opportunity Commission. Defendant Walker said "nothing" in response to this protest of Plaintiff Pippins.

38.     On or about September 7, 2017, Defendant Walker gave Plaintiff Pippins a "counseling record" and placed a copy in Plaintiff Pippins Personnel 201 File.  This counseling record was for "not being at the switchboard."  However, Plaintiff Pippins was performing other assigned duties for the Agency in her assigned office.  Prior to September 7, 2017, Plaintiff Pippins had not suffered any such "counseling reprimand" by Defendant Walker.

39.     Plaintiff Pippins would show that in September 2017, that she did file an internal grievance and she complained about her working conditions and treatment in the workplace. Plaintiff Pippins complained, *inter alia*, about her not being given a proper performance

evaluation, her work being assigned to another employee, preferential treatment of a co-worker, and not being provided with job duties.  Plaintiff Pippins also complained about Defendant Walker berating and demeaning her on July 19, 2017.

40.     Defendant Walker responded to the grievance and told Plaintiff Pippins on September 13, 2017, that she had been working in Emergency Management since October 1, 2015; and that her job duties included working at the switchboard.  Defendant Walker told Plaintiff Pippins that she "should have filed the grievance sooner" and that her workplace complaints were not allowed under the grievance process (non-grievable). Plaintiff Pippins grievance over her working conditions was denied.

41.     Plaintiff Pippins **_next_** complained to Director Pat Cronin with Administrative Operations and he denied her any relief.  Director Cronin reiterated was had been told to her by Defendant Walker that her job duties included working at the switchboard; and she should have complained sooner.    Director Cronin denied any relief to Plaintiff Pippins.

42.     Plaintiff Pippins then complained to Randy C. Ginn, Lieutenant Colonel, MDPS, Chief of Uniform Division. Lt. Colonel Ginn reiterated that Plaintiff Pippins should have complained sooner about her treatment in the workplace and he denied her any relief.

43.     Plaintiff Pippins would show that no one with the Defendant MDPS offered her any resolution to the hostile working environment that she complained, her reduction of duties and responsibilities with the Agency, or to protect her from retaliation and reprisal.

44.     Plaintiff Pippins would show that the September 2017 grievance was submitted to Defendant Fisher, and those in Defendant Walker's chain of command.  No one with Human Resources of the Defendant MDPS offered any assistance to resolve the working conditions and retaliation that Plaintiff Pippins suffered for protesting her unlawful treatment in the workplace.

45.     On or about September 20, 2017, Plaintiff Pippins filed her charge of retaliation against the Defendant MDPS with the EEOC.  This charge related to, *inter alia*, Plaintiff Pippins complaints to management about being subjected to sexual harassment in the workplace. Later, Plaintiff Pippins was transferred to emergency operations and isolated in the workplace.

46.     Plaintiff Pippins would show that Defendant Walker was personally involved in the decision to demote in job duties Plaintiff Pippins and thus limit her advancement with the MDPS. Defendant Walker was also aware of the internal grievance filed by Plaintiff Pippins with the Defendant MDPS regarding her treatment and he was aware as well with the EEOC charge of Plaintiff Pippins in September 2017.

47.     Plaintiff Pippins would show that switchboard duties were delegated to a third party by the Defendant MDPS; and that those staff that answered the telephone and worked at the switchboard were not similarly situated to her and were not employees of the MDPS.  With the permanent assignment or demotion in duties and responsibilities, Plaintiff Pippins was not only denied advancement but her pay and benefits were being reduced by her loss of overtime, loss of Agency "comp time" and thus a loss of PERS retirement benefits.

48.     On or about October 19, 2017, Plaintiff Pippins had an emergency situation to occur regarding elderly mother.   Plaintiff Pippins and her family members had to take their mother to the hospital.  Plaintiff Pippins promptly notified Defendant Walker of this family emergency and that she would not be in for as she was taking care of her mother.  Defendant Walker said – "Ok."

48.     Plaintiff Pippins would show that the next day, Plaintiff Pippins notified Defendant Walker of her mother's condition was not stable and that she needed to stay home the next two (2) days to take care of sick mother. Defendant Walker's response was "Ok."

49.     Plaintiff Pippins would show that her mother's caretaker (St. Dominic's sent a letter of March 24, 2917 that was provide the MDPS regarding Plaintiff Pippins being the person responsible for the care of her mother) and that Defendant Walker was aware of the medical issues with Plaintiff Pippin's mother and the reason for Plaintiff's emergency need to help with her mother.

50.     Plaintiff Pippins would show that she communicated with Defendant Walker on October 19, 20 and 23, 2017, regarding her staying at home to take care of her sick mother. During that three (3) day period Defendant Walker *never* informed Plaintiff Pippins that her request for emergency leave was being denied by him or the MDPS.

51.     Plaintiff Pippins would show that Defendant Walker never informed her that the emergency matter regarding her mother was an issue. In fact, Defendant Walker said nothing other than "Ok."  Defendant Walker did not tell Plaintiff Pippins what she had done wrong that merited discipline.

52.     During the week of October 23-27, 2017, Plaintiff Pippins was confronted by co-workers in regard to her charge before the EEOC.  Management had told co-workers that there was a charge pending filed by Plaintiff Pippins.  This was the second time that Plaintiff Pippins had been approached about her EEOC charge filed in September 2017. This was very stressful for Plaintiff Pippins.

53.     Plaintiff Pippins would show that on or about November 3, 2017, that she was given ***another*** employee "counseling reprimand" by Defendant Walker for "missing too many days without giving the supervisor proper notice and not securing approval prior to absence." Plaintiff Pippins met with Joseph Naegel and Leslie Collins concerning taking excessive leave without giving proper notice.  Defendant Walker presided over the meeting.

54.    During the November 3, 2017, meeting Plaintiff Pippins was told that she would have a follow-up review/evaluation of the problem and correction on December 4, 2017; and she was told by Defendant Walker that she was to provide him with "proper timely notification" as directed under General Order 5.23 by "submitting leave slips for approval."

55.    Plaintiff Pippins would show that she "contested the reprimand" as she was her mother's caretaker (St. Dominic's sent a letter of March 24, 2917 that was provide the MDPS regarding Plaintiff Pippins being the person responsible for the care of her mother) and that Defendant Walker was aware of the medical issues with Plaintiff Pippin's mother and the reason for Plaintiff's emergency need to help with her mother.

56.    On or about December 5, 2017, the EEOC ***received*** the Agency's Position Statement from Natalie Holmes, HR/Legal Liaison with the Defendant MDPS regarding the September 2017 Charge No. 423-2017-02660, filed the by Plaintiff Pippins.  Defendant MDPS claimed that no action taken by the Agency could be construed as biased or unjust towards Plaintiff Pippins; and that the Agency has not taken any action to negatively affect the charging party's wages; and that she had not been subjected to any form of retaliation for her having engaged in a protected activity.

57.    Plaintiff Pippins would show that prior to the September 2017 charge filed with the EEOC, that she had not been annually evaluated by Defendant Walker or the MDPS. Plaintiff Pippen complained about not having her annual evaluation. Defendant MDPS reported to the EEOC that the Agency would perform an evaluation (Defendant Walker) for the year 2017.  However, as of this date, there has been no performance evaluation.

58.    Plaintiff Pippins has not been evaluated for her work performance as required under the General Orders since her transfer to the supervision of Defendant Walker.  Since the

14

filing of the September grievance and EEOC charge, Plaintiff Pippins has been "written up" and denied emergency leave to take care of her elderly and sick mother. The follow up meeting of December 4, 2017, never took place.

59.     After the EEOC received the Agency's Position Statement, the working conditions of Plaintiff Pippins became much, much worse and the treatment by Defendant Walker became more intense.  Employees at the MDPS made additional inquiries in regard to the EEOC Charge of Plaintiff Pippins but she made no comment.  The working conditions that were already stressful became much worse; and she was fearful of a significant change in employment status with the Agency and further acts of retaliation.

60.     Plaintiff Pippins would show that in April 2018, Defendant Walker approved a job assignment to assist Lieutenant Wayne Dearman in the preparing of eleven (11) personnel packets for Travel Orders and Training Orders for employees of the MDPS.  However, Plaintiff Pippins needed some relief from having to go up and down the stairs to answer the switchboard; and she asked some directive from Defendant Walker on prioritizing her job duties.

61.     Plaintiff Pippins would show that in early May, 2018, Plaintiff Pippins made inquiry of Defendant Walker as to the "Compensatory Time BuyOut" that was available to MDPS employees. Defendant Walker did not respond to this request even though the Agency had circulated a memorandum to all employees regarding the buyout of Comp time.

62.     Plaintiff Pippins would show that in response to her inquiries, Natalie Holmes, the HR/Legal Liaison with MDPS Human Resources (the same person that responded to the Charge filed with the EEOC) told Plaintiff Pippins on May 14, 2018, that "multi-tasking is a function of your position" and "should you find it impossible to handle your assigned duties, an evaluation of

your abilities as well as assigned tasks in the form of a desk audit by Human Resources may become necessary."

63.     Plaintiff Pippins would show that Ms. Holmes, HR/Legal Liaison, told Plaintiff Pippins on May 14, 2018, that in response of her inquiry to Defendant Walker in regard to "Compensatory Time BuyOut" that according to Defendant Walker, that "your tasks and responsibilities do not meet the criteria." Defendant Walker informed Ms. Holmes that Plaintiff Pippins workload should be managed within normal workhouse and that she was not eligible, according to Defendant Walker, for "Compensatory Time BuyOut".

64.     On or about June 8, 2018, Defendant Walker ordered Plaintiff Pippins to "report to the switchboard room and answer the phones from there until further notice."  Plaintiff Pippins did as she was told – even though she had complained about the need to perform her assigned work duties.  Plaintiff Pippins felt threatened with this ongoing treatment and retaliation.

65.      During June 2018, Defendant Walker continued to assign Plaintiff Pippins with switchboard duties and have her go up and down the stairs many times a day.  Plaintiff Pippins requested that because of the physical demands that she be allowed to answer the telephone in her office and do her work there as well.  Plaintiff specifically said that "I can't run back and forth like this because of my knee, I started not to come to work today because my legs hurt all night."  Plaintiff Pippins told Defendant Walker that she could answer the phone calls from her office downstairs.  Defendant Walker failed to respond to the office email or to address the working conditions of Plaintiff Pippins.

66.     Plaintiff Pippins would show that the walking long distances was affecting her knees.  Defendants MDPS and Walker continued to impose a hardship on Plaintiff Pippins that was demeaning and physically demanding.  Plaintiff Pippins continued to do as she was told

despite her request for an accommodation for having to travel up and down the stairs to perform switchboard duties and her emergency management duties for the MDPS.

67.     Plaintiff Pippins would show that no other employees of the MDPS had to work under these conditions and no other employees had to work under these condition; and that the conduct in the workplace was server and pervasive.  Now Plaintiff Pippins had to get her physician involved in order to obtain some relief and accommodation at work.

68.     On July 19, 2018, the physician of Plaintiff Pippin wrote a letter to the MDPS, Human Resources regarding her treating Plaintiff Pippins for an arthritic condition that affects her knees and her ability to walk long distances. Plaintiff Pippins physician requested in a formal letter to the MDPS to make accommodations for Plaintiff Pippins so that "she does not have to walk long distances during her daily duties."

69.     After the letter of July 19, 2018, the MDPS provided her with an accommodation that she had previously requested of Defendant Walker and the MDPS.  Prior to the physician letter of July 19, 2018, Defendant Walker and the MDPS made no effort to address the working conditions of Plaintiff Pippins.

70.     Plaintiff Pippins would show that the post-grievance and post-charge retaliation set forth herein grows out of the retaliation complained to the management of the Defendant MDPS and to the U.S. Equal Opportunity Commission in September 2017.  The adverse treatment was because of Plaintiff Pippins grievance and charge filed with the EEOC and her prior workplace complaints against Defendant Walker.

71.     Plaintiff Pippins would show that from and after October 2015, that Defendant Walker has continued to assign her work to other employees; and that Defendant Walker's conduct

has not changed despite her many protests and the filing of her grievance and charge with the EEOC in September 2017.

## **COUNT I**

72.     Plaintiff Pippins re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

73.     Plaintiff Pippins would show that she participated in statutorily protected activity – she complained about her work conditions and treatment in the workplace that resulted in her September 2017 grievance and charge filed with the EEOC.  Plaintiff Pippins was and is entitled to protection from reporting discriminatory and retaliatory employment practices.

74.     Plaintiff Pippins would show that the purpose of the anti-retaliation clause under Title VII is to "maintain unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co., 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997); and Carpenter v. Miss. Valley State Univ., 807 F. Supp. 2d 570 (N.D. Miss. 2011).*

75.     Plaintiff Pippins would show that in the event that she "complain [end] to her employer" in connection with an employer's alleged discrimination or retaliation, then the employee's activities are entitled to protection under Title VII. *Kubrick v. Ogden Logistics Serves. 181 F.3d 544, 551 (4th Cir. 1999).*

76.     As a result of the acts and conduct as alleged herein, Plaintiff Pippins seeks any and all remedies and damages available to her as a result of the aforementioned acts and conduct in violation of the provisions of *Title VII* including but not limited to, actual, and compensatory damages as a result of the acts and conducts of the Defendant MDPS as alleged herein.

77.     Plaintiff Pippins would further show that that acts and conduct of the Defendant MDPS and its male dominated management team including Defendant Walker caused her emotional distress including but not limited to her sleep deprivation, and other physical symptoms attributed to the acts and conducts of Defendants MDPS and Walker.

78.     As a result of the acts and conduct that Plaintiff Pippins was subjected to in the workplace entitle her to a recovery for actual and compensatory damages for her psychological injuries that occurred as a result of the actions of Defendants MDPS and Walker.

## COUNT II

79.     Plaintiff Pippins re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

80.     Plaintiff Pippins would show that the Defendant Walker, by his actions and conduct, violated the equal protection rights of Plaintiff Pippins.  Defendant Walker was personally involved in the deprivation and their actions and conduct deprived Plaintiff Pippins of equal protection under the Fourteenth Amendment to the United States Constitution and for First Amendment retaliation, infra, under 42 U.S.C. Section 1983 for having engaged in a protected activity by filing an internal grievance with the MDPS and a charge of retaliation against the MDPS with the EEOC.

81.     Plaintiff Pippins  would show that Section 1983 liability should be "***read against the background of tort liability that makes a man responsible for the natural consequences of his actions.***" *Martinez v. Carson, 697 F.3d at 1255 (quoting Monroe v. Pape, 365 U.S. 167, 187, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961), overruled in part by Monell v. Dep't of Soc. Servs., 436 U.S. at 663).* "***Thus, Defendants are liable for the harm proximately caused by their conduct.***"

*Martinez v. Carson, 697 F.3d at 1255 (citing Trask v. Franco, 446 F.3d at 1046)*. As the Court has previously concluded, "a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover ***compensatory damages for all injuries suffered as a consequence of those deprivations.***  The recovery should be guided by common-law tort principles -- including principles of causation . . . ." *Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1251 (D.N.M. 2009)(Browning, J.)*.

82.     Defendant Walker was personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation; and thus he is liable under Section 1983 for those deprivations.  *Jabary v. City of Allen, 547 Fed. Appx. 600, 2013 U.S. App. LEXIS 23628 (5th Cir. 2013)*.  The personal involvement requirement is satisfied where "the failure to supervise . . . was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights." *Owens v. Haas, 601 F.2d 1242 (2d Cir.) cert. denied, 444 U.S. 980, 100 S. Ct. 483, 62 L. Ed. 2d 407 (1979)*.

83.     Plaintiff Pippins  would show that the actions of the Defendant MDPS and its designee named herein, Defendant Walker, and under the color of law under *42 U.S.C. §1983* have violated the Fourteenth Amendment to the United States Constitution and these acts and conduct in retaliation have been violated the Equal Protection Clause and First Amendment for which Plaintiff Pippins seeks all appropriate relief under law.

84.     Plaintiff Pippins would show that she received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory and retaliatory intent on the part of Defendant Walker. *Taylor v. Johnson, 257 F. 3d 470, 473 (5th Cir. 2001)*.

85.     Plaintiff Pippins would show that in regard to her retaliation claim based on an equal protection violation under Section 1983 that Defendant Walker (1) acted under the color of state law, (2) took adverse employment action against her, (3) because Plaintiff Pippins complained of or otherwise engaged in a protected activity regarding her unlawful treatment in the workplace.

86.     Defendant Walker should be assessed actual and compensatory damages for the violation of the Equal Protection Clause and First Amendment rights of Plaintiff Pippins.

## COUNT III

87.     Plaintiff Pippins re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

88.     Plaintiff Pippins would show that Defendant MDPS allowed Defendant Walker to take adverse employment actions against her in retaliation for the filing of an internal grievance and the filing of an EEOC charge in which Plaintiff Pippins complained or otherwise protesting her unlawful treatment and retaliation in the workplace.

89.     Plaintiff Pippins would show that retaliation occurs when an employer takes action against an employee not because of his or her sex, but because she engaged in protected activity complaining about or otherwise opposing discrimination.  In the case, *sub judice*, Defendant MDPS engaged in such retaliation against Plaintiff Pippins in violation of Title VII and the Equal Protection Clause.

90.     Plaintiff Pippins would show that the purpose of the anti-retaliation provisions under Title VII and the First Amendment is to prevent any employment action by an employer or government official like Defendant Walker from engaging is any conduct that  "well might have

dissuaded a reasonable worker" from making or supporting a charge of discrimination or retaliation.

91.     Defendants MDPS, et al intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the Complaint of Plaintiff Pippins  in violation of Title VII and this Court should enjoin the Defendant MDPS and its management team members from engaging in such unlawful employment practice, and this Court should order and direct such affirmative action as may be appropriate, which may include, but is not limited to, revamping of the internal grievance process to preclude and prevent retaliation for making complaints to management  or any other appropriate equitable relief as the court deems appropriate.

92.     Plaintiff Pippins requests that this Court enjoin Defendants MDPS, et al from engaging in acts of retaliation in violation of Title VII; and award such other equitable relief as this Court deems appropriate.

## COUNT IV

93.     Plaintiff Pippins re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

94.     Plaintiff Pippins would show that the Defendant Walker, by his actions and conduct, violated the equal protection rights of Plaintiff Pippins.  Defendant Walker was personally involved in the deprivation and his actions in retaliating against Plaintiff Pippins was with deliberate indifference to the rights and entitlements of Plaintiff Pippins.   Defendant Walker's own personal acts and omissions resulted on the constitutional deprivation claimed by

Plaintiff Pippins; and Defendant Walker's actions were intentional or with deliberate indifference and continue to be intentional and deliberate to this date.

95.     Plaintiff Pippins would show that she received treatment *different* from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent on the part of Defendant Walker because of her complaints of unequal treatment and retaliation in the workplace.

96.     Defendant Walker's actions and conduct was also retaliatory as result of Plaintiff Pippins's opposition to unlawful retaliation in the workplace both before and after the filing of the grievance and charge with the EEOC in September 2017.

97.     As a result of the First Amendment retaliation, Plaintiff Pippins has suffered emotional distress and for which that emotional distress continues as a result of her severe and pervasive treatment in the workplace of the Defendant MDPS.

97.     As a result thereof, Plaintiff Pippins is entitled to actual, compensatory and punitive damages against Defendant Walker.

## COUNT V

98.     Plaintiff Pippins re-alleges and hereby incorporates by reference and makes a part hereto each and every one of the above numbered paragraphs, inclusive of the allegations of fact contained therein.

99.     Plaintiff Pippins would show that public employees do not surrender all their First Amendment  rights by reason of their employment.  Plaintiff Pippins was unlawfully retaliated for exercising her First Amendment rights by Defendants MDPS, and Walker.

100.     Plaintiff Pippins  avers that she is entitled to prevail on a First Amendment retaliation claim, as she (1) suffered an adverse employment decision; (2) was engaged in

protected activity; and (3) there is the requisite causal relationship between the adverse action and protected activity. *Jordan v. Ector County, 516 F.3d 290 (5th Cir. 2008).*

101.    Plaintiff Pippins would show that her protected speech is a matter of public interest, and was engaged in to "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." *Scarier v. Univ. of Colo., 427 F.3d 1253, 1263 (10th Cir. 2005) (quoting Wilson v. City of Littleton, Colo., 732 F.2d 765, 768 (10th Cir. 1984)).*

102.    Plaintiff Pippins would show that she was subjected to retaliation and reprisal for having come forward both internally (grievances) and externally – going to the EEOC and filing a Charge – challenging the malfeasance within the Defendant MDPS and it unlawful retaliation in the workplace that continues to this date, *infra*.

103.    Defendants MDPS, et al should be assessed actual and compensatory damages for the violation of the First Amendment rights of Plaintiff Pippins.

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** based on the foregoing allegations, Plaintiff Pippins requests the Court to assume jurisdiction over this cause, and upon a hearing of the merits in this cause, grant the following relief:

a.    Ordering and directing the Defendant MDPS to restore Plaintiff Pippins to her job duties along with any and all pay due to date; and to compel the Defendant MDPS to abandon the unlawful retaliatory treatment to employees that file a grievance or charge with the EEOC for unlawful conduct that violates the Equal Protection Clause of the Fourteenth Amendment and constitutes First Amendment retaliation.

b.    Order and direct the Defendant MDPS to pay any and all back pay and benefits due Plaintiff Pippins and to provide her with the back pay and any loss of benefits that have

resulted from the discrimination and retaliation that she has been subjected to in violation of Title VII and the Equal Protection Clause; and First Amendment to the U.S. Constitution.

      c.      Award Plaintiff Pippins a judgment against Defendant MDPS in the amount of $750,000.00 for her actual and compensatory damages to which she is entitled for injury, damage, and loss suffered as a result of Defendant MDPS's retaliation and violation of 42 U.S.C. §§ 2000e; Title VII, and violation of the First Amendment rights of Plaintiff Pippins and violation of the Equal Protection Clause of the United States Constitution;

      d.      Award Plaintiff Pippins all costs and attorney's fees pursuant to the relevant provisions of 42 U.S.C. §§ 2000e; and 42 U.S.C. Section 1988;

      e.      Grant a permanent injunction enjoining Defendant MDPS, its agents, employees, successors, assigns, and all persons in active concert or participation with them, from engaging in retaliation in violation of 42 U.S.C. §§ 2000e and Title VII; and the Equal Protection Clause; and in regard to First Amendment retaliation;

      f.      Award a judgment against Defendant Walker in an amount of compensatory damages as determined by the jury for violation of the Equal Protection Clause and First Amendment rights of Plaintiff Pippins under 42 U.S.C. Section 1983; and the assessment of compensatory damages as provided for by law for the deprivations caused Plaintiff Pippins and for punitive damages in an amount to be determined by the Court and jury to deter such intentional conduct from occurring in the future and as a result of the deliberate indifference of Defendant Walker for his actions in the case, *sub judice*; and

      g.      Award Plaintiff Pippins all such other and further relief as may be necessary and proper and to which she is otherwise entitled pursuant to the provisions of 42 U.S.C. §§ 2000e and pursuant to Title VII; and Plaintiff Pippins also seeks any and all other appropriate relief as

she may be entitled under the claims brought herein in this her Complaint filed in this action

against Defendants MDPS and Walker.

      **RESPECTFULLY SUBMITTED**, this the 14th day of August, 2018.

                **DEBRA PIPPINS, PLAINTIFF**

          **By:  /s/ John M. Mooney, Jr.**
                **JOHN M. MOONEY, JR.**
                **HER ATTORNEY**

**JOHN M. MOONEY, JR.**
**LAW OFFICES OF JOHN M. MOONEY, JR., PLLC**
208 Waterford Square, Suite 100
Madison, Mississippi 39110
Telephone: (601) 981-9555
Facsimile:   (601) 981-7922
Email: john@jmooneylaw.com
**MBIN: 3431**

**ATTORNEY FOR PLAINTIFF, DEBRA PIPPINS**

             **REQUEST FOR TRIAL BY JURY**

      Plaintiff, **DEBRA PIPPINS,** by and through counsel, respectfully requests this Court to

grant her a trial by jury of her peers.

      **RESPECTFULLY SUBMITTED**, this the 14th day of August, 2018.

          **By /s/ John M. Mooney, Jr.**
                **JOHN M. MOONEY, JR.**
                **HER ATTORNEY**