**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DEBRA PIPPINS**                                                                                    **PLAINTIFF**

**vs.**                                                    **CIVIL ACTION No.: 3:18-CV-541-HTW-LRA**

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;
MARSHALL L. FISHER, CHAIRMAN OF THE
MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;
AND JAMES WALKER, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY**                                          **DEFENDANTS**

## ORDER ON SUMMARY JUDGMENT

Before this court is a Motion for Summary Judgment [doc. no. 35], filed by the

Defendants herein: the Mississippi Department of Public Safety (hereinafter "MDPS");

Marshall L. Fisher, Chairman of The Mississippi Department of Public Safety (hereinafter,

"Fisher"); and James Walker, individually and in his official capacity as Director of

Emergency Management for MDPS (hereinafter "Walker"). The Plaintiff, Debra Pippins,

an employee of the MDPS, opposes the motion. Briefing has been completed and this court

now makes its ruling.

JURISDICTION AND VENUE

On August 14, 2018, Plaintiff filed this lawsuit in this federal forum, invoking the

subject matter jurisdiction of this court under 28 U.S.C. §1331, [1] since Plaintiff's claims

---

[1] § 1331. Federal Question
  The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws,
or treaties of the United States.
28 U.S.C. §1331.

arise under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e,[2] and 42 U.S.C. § 1983[3] both federal enactments. Venue is appropriate in this federal district, since Plaintiff's claims allegedly arose at the Department of Public Safety in Jackson, Mississippi, within the Southern District of Mississippi.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Debra Pippins is an African American female, employed with the MDPS. She began her career with MDPS in 1987, as a Clerk Typist Senior. Her duties in that department consisted mainly of typing and administrative work, some proofreading and grading trooper school test papers. Pippins was transferred to Driver Services in the Safety Responsibility Department after about a year, still as a Clerk Typist Senior. In this position Pippins dealt with members of the public who were purchasing accident reports and accident reconstruction reports prepared by MDPS.

---

[2] Title VII of the Civil Rights Act of 1964 is codified as Title 42 U.S.C. § 2000e *et seq.* Congress enacted title VII "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which would have fostered racially stratified job environments to the disadvantage of minority citizens*." McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800(1973) (as quoted in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 526 (1993)). Title VII "is central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2522 (2013).

[3] **42 U.S.C. § 1983. Civil action for deprivation of rights.**
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. §1983

Pippins was promoted four or five years later to Accounting Clerk Senior and placed with the Driver Records Department (still within Driver Services), where she handled money that came in from license reinstatement fees, made bank deposits and worked to ensure that the money was balanced.  Some time later, Pippins was transferred back to Safety Responsibility, a lateral transfer. In this position Pippins' role was data entry – entering traffic tickets into the computer system.

In 2008, Pippins was promoted to Support Technician Senior in the office of the Director of Driver Services.  Her work in that role was administrative work, including answering telephones, typing and scheduling and paying bills.  Later in 2008, Pippins was promoted to Project Officer II Special.  Her job duties remained the same, and Pippins remained in that position for six years. Still in the role of Project Officer II Special, Pippins was transferred in November of 2014 to Central Print.

It was around  this time, according to Pippins, that she was questioned about a sexual harassment grievance that she had lodged in 2007, against Ken Brown (hereinafter "Brown"), a former supervisor.  Brown was being promoted to Director of Driver Services at the time, which would have placed Pippins working directly for Brown as his administrative assistant.

Chris Gillard (hereinafter "Gillard" or "Colonel Gillard") was, at the time of his deposition, the Director of the Mississippi Highway Patrol and Assistant Commissioner of the Mississippi Department of Public Safety.  For most of the time period relevant to Pippins' allegations, the Director of the Mississippi Highway Patrol was Colonel Donnell Berry (hereinafter "Berry" or "Colonel Berry"). Gillard testified at his deposition that

3

when he inquired of Colonel Berry about Pippins' sexual harassment complaint, he [Gillard] was told by Berry, "it was nothing to it. … It was unfounded." *Gillard Deposition* pp  9-10 [doc. no. 41-1 p 5].

Thereafter, according to Pippins, she was subjected to adverse employment decisions, mistreatment, and a hostile working environment, which, she contends, were in retaliation for that 2007 compliant that had been resurrected in 2014, when Brown, the person she had accused of sexual harassment, was promoted to Director of Driver Services.   These actions, says Pippins, included transfer to a different division, removal of her "administrative access" and assignment to processing online drivers' licenses in the back instead of in the main lobby. This was a demotion, according to Pippins.  As discussed later in this Opinion, Gillard's deposition testimony purported to show that the transfer was instigated by Brown because of the complaint Pippins had made against Brown back in 2007. See  *Gillard Deposition* pp. 5-11 [doc. no. 41-1 pp. 4-5].

This transfer and the actions that followed, Pippins claims, constitute race-based discrimination under Title VII and § 1983, retaliation under Title VII,  and violations of her constitutional rights to free speech and equal protection.

By letter dated October 1, 2015, and signed by Colonel Berry, Pippins was transferred again.  She was transferred to Emergency Operations, under the supervision of Defendant James Walker (hereafter "Walker").  Walker says he was asked by Col. Berry and Chris Gillard (Lt. Col. Gillard at that time) if he [Walker] needed any help in Emergency Operations.  Despite Walker informing Colonel Berry and Gillard that he

didn't have anything for anyone to do, Pippins was transferred into Emergency Management, under Walker's supervision.

During 2015-16, Pippins says she had had little or nothing to do in that position. Pippins explains that during this time her only duties were to mail out certificates and to type up an occasional meeting agenda.  Pippins also complains that she had earned comp time and overtime in her previous positions, but did not have the opportunity to earn either while in Emergency Management.

Around August 6, 2016, Walker instructed Pippins to fill in at the switchboard for someone who would be out.  She continued to fill in at the switchboard when someone was out or during lunch time.  On May 17, 2017, Walker instructed Pippins to report to the switchboard from 8:00 a.m. until 5:00 p.m. each weekday until further notice.  On August 31, 2017, Pippins learned from Leslie Collins, who was over the switchboard, that Walker had assigned her [Pippins] permanently to switchboard duty. This was confirmed by Walker.

On August 31, 2017, Pippins says she complained to Walker about her treatment and lack of job duties and, additionally, informed him that she intended to file a grievance and a charge with the United States Equal Employment Opportunity Commission ("EEOC").

Within days, on September 7, 2017, Walker gave Pippins a written counseling for leaving her workstation unattended on August 31, 2017.  [doc. no. 35-4].  Four days later, September 11, 2017,  Pippins filed a grievance with MDPS about her work assignment

and requested a job description and performance evaluation.  On September 20, 2017, Pippins filed her charge with the EEOC.

After the initial EEOC Charge, Pippins says she was subjected, by the Defendants, MDPS and Walker, to ongoing acts of retaliation: continued full-time assignment to the switchboard, failure to conduct performance appraisals in spite of her requests, and excluding her from overtime and comp time opportunities.  Pippins also claims that she was threatened with a desk audit after her 2017 EEOC Charge, that could have resulted in a reduction in pay.  Pippins says she perceived this as an attempt to stop her from complaining and to put her in fear of a pay cut.

Pippins was issued a "Dismissal and Notice of Rights" [4] [doc. no. 1-1] by the EEOC, said Notice was dated May 17, 2018.  Pippins filed this lawsuit on August 14, 2018, within ninety days of having been granted her "right to sue" by the EEOC.

---

[4] A "right to sue" notice issued by the Equal Employment Opportunity Commission (EEOC) United States Department of Justice aims to inform the claimant who has made a charge of discrimination that the EEOC has completed its investigatory and/or conciliatory activities with regard to the claimant's charges; that the Department of Justice will not file a lawsuit on behalf of the claimant; and that the claimant has ninety days from receipt of the right to sue letter to file his/her own lawsuit. Receipt of the Right to Sue letter is a prerequisite to filing a lawsuit based on an EEOC Charge of Discrimination.  See Snider v. L-3 Comm'ns Vertex Aerospace, LLC, No. 3:09-CV-704-HTW-LRA, 2016 WL 3648281, at *3 (S.D. Miss. Mar. 15, 2016).

Pippin's "Dismissal and Notice of Rights" stated the following as the EEOC's reason for closing its file. "The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge." EEOC Dismissal and Notice of Rights [doc. no. 1-1 p.1]. This finding in no way precludes the filing of a lawsuit by the claimant, and in fact informs the claimant of his or her right to file a lawsuit within ninety days of receipt of the notice. Id.

As of the time of the filing of this lawsuit Pippins, a thirty-year employee of MDPS, remained employed with the MDPS assigned to emergency operations, and her duties still included manning the switchboard.

LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*; *Copeland v. Nunan,* 250 F.3d 743 (5th Cir. 2001); see also *Wyatt v. Hunt Plywood Company, Inc.,* 297 F.3d 405, 408–09 (2002). When assessing whether a dispute to any material fact exists, all of the evidence in the record is considered, but the court refrains from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); instead, the court is to "draw all reasonable inferences in favor of the nonmoving party." *Id.*; *Wyatt,* 297 F.3d at 409. All evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc*. 369 U.S. 654, 655 (1962).

A party cannot, however, defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."   *TIG Ins. Co. v. Sedgwick James of Wash. 276 F.3d 754, 759 (5th Cir. 2002); S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).  Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving

party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

ANALYSIS

Pippins' Complaint lists five causes of action: (1) Retaliation in violation of Title VII; (2)  Defendant MDPS and Defendant Walker under 42 U.S.C. §1983 violated the Fourteenth Amendment to the United States Constitution, the Equal Protection Clause and the First Amendment and engaged in retaliation under 42 U.S.C. Section 1983; (3) Defendant MDPS allowed Defendant Walker to take adverse employment actions against her in retaliation for the filing of an internal grievance and the filing of an EEOC charge protesting her unlawful treatment and retaliation; (4) Defendant Walker's personal acts and omissions  violated the equal protection rights of Plaintiff; (5) Defendants MDPS and Walker retaliated against Plaintiff for exercising her First Amendment rights.

Plaintiff summarizes her claims, however, in the first paragraph of the Introduction to her Complaint as follows:

1. Plaintiff Pippins charges Defendant MDPS with unlawful employment practices on the basis of retaliation in violation of 42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964, as amended (hereinafter "Title VII"); and Plaintiff Pippins brings claims under 42 U.S.C. Section 1983 for the intentional discrimination and retaliation against Defendant Walker in violation of the Equal Protection Clause of the Fourteenth Amendment.

*Complaint* [doc. no. 1 ¶1].

It is well settled that before filing suit under Title VII for discrimination or retaliation, a claimant must exhaust administrative remedies by submitting that claim to the EEOC and allowing that agency  an opportunity to investigate and possibly resolve

8

the dispute. *Tolbert v. United States*, 916 F. 2d 245, 247 (5th Cir.1990). "Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC." *Filer v. Donley*, 690 F. 3d 643, 647 (5th Cir. 2012).

Plaintiff's Charge of Discrimination filed with the EEOC alleges only "retaliation, as a continuing action." The printed EEOC charge form instructs the claimant to check the appropriate boxes for the basis of the discrimination alleged. The following options are provided: race; color; sex; religion; national origin; retaliation; age; disability; genetic information; and other. The only box checked by Pippins is "retaliation." Her charge does not allege race or sex discrimination, or any of the other categories.

While it is unclear whether Plaintiff is bringing other Title VII claims in her lawsuit, to the extent that she is attempting to bring other Title VII claims for discrimination, they must be dismissed for failure to exhaust administrative remedies. Her claims brought under §1983 are not subject to the requirements of administrative exhaustion, and will be separately discussed.

This court examines the issues in the order in which they are raised in Defendant's motion.

I.     Title VII Retaliation

Pippins' lawsuit under Title VII is against her employer, MDPS, only. Fellow employees or supervisors are not subject to liability under Title VII. *Indest v. Freeman Decorating, Inc.,* 164, F. 3d 258, 262 (5th Cir. 1999); see also *Muthukumar v. Kiel,* 478 F. App'x 156, 158 (5th Cir. 2012); *Payne v. Univ. of S. Mississippi*, 681 F. App'x 384,

389 (5th Cir. 2017). Plaintiff's claims under § 1983 against Defendants Marshall L. Fisher and James Walker are discussed elsewhere in this opinion.

Defendants argue that Pippins' allegations are untimely and, accordingly, this court lacks jurisdiction to hear her claims. A claimant is required to file an EEOC charge within 180 days of the act about which he or she complains. See e.g., *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Plaintiff filed her EEOC charge on September 20, 2020 [doc. no. 45-1]. Therefore, say Defendants, any actions occurring prior to March 24, 2017 (180 days prior to the date of the EEOC charge) are not timely and must be dismissed. This would include the transfer to Emergency Management in October 2015, and Plaintiff's initial assignment to fill in at the switchboard beginning August of 2016.

According to Defendants, only three of the incidents of which Pippins complains fall within the 180-day time period. Therefore, they say, these are the only acts that are, arguably, properly before this court: (1) On May 17, 2017, Pippins was directed to report to the switchboard from 8 to 5 Monday through Friday until further notice; (2) On August 31, 2017, Pippins learned from Leslie Collins that she had been transferred permanently to switchboard duty; and (3) On September 7, 2017, James Walker gave Pippins a written counseling (which according to Pippins, came on the heels of her complaining to Walker about her treatment and reduction in job duties and informing Walker that she intended to file a grievance and a complaint with the EEOC).

Defendants also argue that Pippins cannot establish a prima facie case under the

Requirements of *McDonnell Douglas* and its progeny. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* burden-shifting test, the employee must first establish a prima facie case of discrimination. If she succeeds, the employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action; if the employer does so, the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (discussed in *Gonzales v. ConocoPhillips Company*, 806 Fed. Appx. 289 (5th Cir. 2020); see also *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *LeMaire v. Louisiana,* 480 F.3d 383, 388–89 (5th Cir. 2007) (discussing burden shifting in retaliation case).

To make that prima facie showing of ***retaliation*** under Title VII, Pippins must show "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F. 3d 450, 454 (5th Cir. 2013); *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007).

In the retaliation context, the employee demonstrates pretext "by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive." *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338 (2013) (Title VII plaintiffs bringing retaliation claims under § 2000e-3(a) must show that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"). *Id.* at 360 (as cited in

*Stanton v. Jarvis Christian Coll.,* No. 20-40581, 2022 WL 738617, at *5 (5th Cir. Mar. 11, 2022)).

Defendants say that the acts in question do not constitute adverse employment actions; so. continue Defendants, Pippins cannot meet the second requirement to establish a prima facie case.  This court disagrees.

This court is of the opinion that Plaintiff has established a prima facie case for retaliation.  Plaintiff has established the first criteria.  Her sexual harassment complaint, her filing of a grievance with the Commissioner, and her filing of an EEOC charge, are all *protected activity* as contemplated under Title VII.

This court is also persuaded that the third element is met -- a causal connection allegedly exists between her protected activity and the adverse action. The deposition testimony of Chris Gillard establishes that purported causal connection , at least as to the original sexual harassment complaint lodged by Pippins.

Chris Gillard, testified at his deposition that around 2014, Brown had made him aware of the 2007 sexual harassment allegations Pippins had made against Brown. According to Gillard, Brown said he thought it would be very uncomfortable for Pippins to be his administrative assistant.  Brown was only the interim Director of Driver Services at the time and did not have the authority to transfer Pippins, according to Gillard.  Brown requested that she be transferred, however.  *Gillard Deposition* p. 8 [doc. no. 41-1 p 5].

Gillard testified as follows:

Q. When Major Brown told you about the concern he had about Ms. Pippins in 2014, did he make a request that Ms. Pippins be transferred?

A. Yes.

Q. Okay. Now, you were here during his deposition today, but what were the circumstances surrounding Ms. Pippins being transferred to central print?

A. ***It was based upon the complaint she had filed against him.***

Q. Okay.

A. ***That's the reason why she was transferred***.  He wanted her transferred.

…

Q. And even after the transfer, whether Ms. McKinnon was an intermediary or not, that department of central print was under the supervision of Major Brown?

A. Yes., that fell under him.  That was in his chain of command.

*Gillard Deposition* pp.  10-12 [doc. no. 41-1 p.p. 5-6] (emphasis added).

Additionally, the timing of certain other alleged retaliatory acts raise the specter of a causal connection.  For instance, the written counseling submitted by Walker within days of Pippins informing him that she was going to file a grievance and an EEOC charge, smacks of possible retaliatory motive.  Because of the matters above discussed, this court is of the opinion that the first and third requirements to establish a prima facie case of retaliation – protected activity and causal connection -- have been met by Plaintiff.

The remaining requirement that must be proven by Pippins, is whether the employer took an adverse employment action against her.  Defendants say that these acts do not constitute adverse employment actions; so, they argue that Pippins cannot meet the second element necessary to establish a prima facie case. This court disagrees.

The transfers and treatment endured by Plaintiff, if true, may constitute adverse employment actions.  An "adverse employment action" in the Title VII retaliation context

turns on whether the action was materially adverse, such that it would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Anthony v. Donahoe*, 460 Fed. Appx. 399, 404 (5th Cir. 2012) (quoting *Burlington Northern and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).

In *Craven v. Texas Dept. of Criminal Justice-Institutional Div.,* the federal district court did a survey of cases that examined the issue of when a "lateral transfer" (or denial of lateral transfer) constituted an adverse employment action.  (Plaintiff in the case *sub judice*, however, contends that her transfer was not a lateral transfer).  The cases below, according to the *Craven* court, found that the involved lateral transfer did ***not*** constitute an adverse employment action.

> See, e.g., *Sims v. Boeing Co.*, 215 F.3d 1337, 2000 WL 633228, at *1 (10th Cir. May 17, 2000) (unpublished) (transfer to the second shift); *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir.1998) (longer commute and insignificant alteration in job responsibilities); *Kindred v. Northome/Indus. Sch. Dist. No.* 363, 154 F.3d 801, 802–04 (8th Cir.1998) (assigning bus driver to longer school bus route without increase in pay), *cert. denied,* 525 U.S. 1109, 119 S.Ct. 881, 142 L.Ed.2d 781 (1999); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994) (different duties and more stressful job, but no reduction in title, salary, or benefits; "Changes in duties or working conditions that cause no materially significant disadvantage, such as Harlston's reassignment, are insufficient to establish the adverse conduct required to make a prima facie case."); *Whitehead v. Norfolk Southern Ry. Co.*, 53 F.Supp.2d 1380, 1382–83 (M.D.Ga.1999) (transfer to different area of forwarding yard involved no change in hours, pay, benefits, or "off days"; only change was that gravel in one area was harder to walk on—"at most, a minor change in his work environment, which does not amount to an adverse employment action"); *Smith v. Schering–Plough Health Care Products, Inc.,* 6 F.Supp.2d 731, 734 (W.D.Tenn.1997) (plaintiff conceded that transfer was not a demotion, and that he suffered no emotional injuries, serious stress, or ruined reputation); *Joiner v. Ohio Dep't of Transp.*, 949 F.Supp. 562, 567 (S.D.Ohio 1996) (no "loss of prestige or an objectively demeaning change of working conditions";

new title and "the loss of opportunity for overtime and the loss of supervisory responsibility" insufficient to constitute adverse employment action).

*Craven v. Texas Dept. of Criminal Justice Institutional Div.*, 151 F.Supp. 2d 757

(N.D. Texas 2001).

When courts have held a lateral transfer to be an "adverse employment action, the *Craven* court said, "the position sought or lost [had] been objectively better in some respect." *Id.,* at 766. See, e.g., *Lulac Council 4433 & 4436 v. City of Galveston*, 979 F.Supp. 514, 518–19 (S.D. Tex. 1997) (plaintiffs were transferred to less prestigious positions, which were clearly seen as demotions; other officers typically seek to be transferred out of, rather than into, the department to which plaintiffs were transferred).

Pippins cites to this court other cases where courts have found the transfer to be an adverse employment action. See, e.g., *Forsyth v. City of Dallas*, Tex., 91 F.3d 769, 774 (5th Cir. 1996) (§ 1983 retaliation: "positions were more prestigious, had better working hours, and were more interesting than night patrol. Moreover, few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been so transferred as punishment.") *cert. denied,* 522 U.S. 816 (1997); *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992) (§ 1983 retaliation: "jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section"; "'everybody' views a transfer from detention to law enforcement as a promotion"; also some evidence of lost seniority rights); *Collins v. State of Illinois*, 830 F.2d 692, 704 (7th Cir. 1987) (Title VII retaliation; "relegated to doing reference work instead of consulting"; no longer had private office, own phone, business cards, or listing in professional publications);

15

*Florence v. Runyon*, 990 F. Supp. 485, 498 (N.D. Tex. 1997) (Title VII retaliation; less desirable location, change in scheduled work hours, increased travel time, different duties).

In looking for a common thread, this court notes that one indicator of when a move is considered "objectively adverse" is when other employees view the position as undesirable.   In the instant case, according to Pippins, and not disputed by Defendants, the position of switch board operator had never been filled by a MDPS employee during her time with the agency.  The switch board operators were generally contract workers who were not even civil service employees. This position then, might be objectively perceived as an undesirable position, a punishment, and/or a position lower than that of any MDPS employee.

Before being assigned to the switchboard, Pippins had little or no work to do. Having no work to perform in an eight-hour day would prove sufficiently unbearable to most people.  According to Pippins, it was an assignment designed to force her to resign. Pippins endured days and days of having no job duties and no responsibilities.  In one instance when she began receiving training, Pippins says, it was discontinued, without explanation, before the end of the day.

Plaintiff thus contends that, without any legitimate explanation provided to her for the move, she was transferred from a position as administrative assistant to the Director of Driver Services to a job of so little consequence in the minds of the MDPS administration that said job was not normally even assigned to MDPS personnel, but was performed by ***temporary*** contract workers.  Such treatment, she adds, was definitely

likely to have a chilling effect upon other would-be critics and to have prevented these other employees from filing complaints similar to the ones she filed.

This court is satisfied that Plaintiff has established her prima facie case of retaliation.  Her allegations have met all three of the required trio for prima facie recognition.

The burden now shifts to the Defendant employer to articulate a legitimate, non-retaliatory reason for the challenged employment action.  *Long v. Eastfield Coll.,* 88 F. 3d 300, 308 (5th Cir. 1996). If the employer meets this responsive burden, the evidentiary production burden shifts back to the plaintiff, who must then offer sufficient evidence to keep her lawsuit alive, to create an issue of material fact as to whether the proffered reason is pretextual. *Simani v. Beechnut Acad.,* 740 F. App'x 445, 446 (5th Cir. 2018).

Defendants do not offer any legitimate reason for Pippins' transfer to the Central Print Department.  Defendants only say this action was not the subject of a timely EEOC charge.

Defendants claim Plaintiff's transfer from Central Print to Emergency Management was due to job performance issues; but Defendants' documentation of these issues is questionable, as Pippins claims never to have received at least one of the write-ups in her file,[5] and Defendants cannot show that she was made aware of them.

---

[5] Pippins, in her Declaration filed with this court, states that Rose McKinnon, her supervisor while she was assigned to Central Print, never disciplined her.  "I never received the write up that McKinnon claimed to have given me in September 2015. I also never received that written warning from Ken Brown claiming that I had engaged in ***insubordination.***" Declaration of Debra Pippins [doc. no. 41-3 p. 2, 14-15] (emphasis in original).

The legitimacy of Defendants' articulated reason, is also belied by Pippins having received only good evaluations ("meets or exceeds expectations") for the more than twenty-year period that she was being evaluated; but Defendants did not provide any performance evaluations for Pippins after 2011, even after she complained to her superiors about not receiving performance evaluations.  The legitimacy of Defendants' reason is also belied by Pippins never having been placed on a Performance Improvement Plan (PIP).[6]

Defendants contend, though, that Pippins did not timely file a charge with EEOC for the two transfers to which she was subjected and that these are therefore, time barred. A review of Pippins' EEOC charge reveals that she included descriptions of the two transfers which Pippins alleges to be in retaliation for her sexual harassment complaint against Brown, and the EEOC investigation included requests for documents from MDPS concerning those transfers.

The Fifth Circuit Court of Appeals informs us that it interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (Fifth Cir. 1970). The Court continued: "We engage in fact intensive analysis of the statement given by the plaintiff in the administrative charge,

---

[6] "The corrective action required when a[] [State of Mississippi] employee's performance falls below a 2.0 rating is the placement of that employee on a Performance Improvement Plan ("PIP").   *Walters v. Mississippi Dept. of Economic and Community  Development,"* 768 So.2d 893 (Miss. 2000).

and look slightly beyond its four corners, to its substance rather than its label." *Id.;* see also *Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 451 (5th Cir. 1983); *Fine v. GAF Chemical Corp.,* 995 F.2d 576, 578 (5th Cir. 1993).

The administrative-exhaustion requirement is also considered met for any other claims within "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination". *Pacheo v. Mineta*, 448 F. 3d 783, 789 (5th Cir. 2006) (internal quotation marks omitted). This rule serves "to trigger the investigatory and conciliatory procedures of the EEOC" without keeping unsophisticated complainants out of court on technicalities. *Id.* 788-89.

Pippins checked the box on her EEOC Charge form for "continuing violation." Plaintiff here, alleges that the violations against her constituted a continuing violation beginning in 2014. "The continuing-violation exception is an equitable doctrine that extends the limitations period on otherwise time-barred claims when the unlawful employment practice in question "manifests itself over time, rather than as a series of discrete acts." *Noack v. YMCA of Greater Houston Area*, 418 Fed. Appx. 347 (5th Cir. 2011) (citing *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 279 (5th Cir.2004).

In her EEOC Charge, Pippins did include allegations concerning the adverse actions taken beginning in 2014, ***and*** the EEOC appears to have investigated all of these actions. The narrative provided by Pippins in her EEOC charge states in its entirety:

> I began working for Respondent in 1987. I currently hold the title of Project Officer II. In October 2007, I filed a sexual harassment complaint against Captain Kenneth Brown, who I reported to at the time.
> Since this time, I am no longer under Captain Brown's supervision. I worked in the Driver Services Department, under Captain Prentiss Parker, in

the Director's Office.  He retired and [C]aptain Kenneth Brown took over his position in 2014.  I worked under him for approximately seven months.  He tried to find errors in my work.  He also informed Major Gillard that I had previously complained about sexual harassment on him.  Major Gillard called us both into the office (2014) and questioned me about what my complaint against Captain Brown was about (with him present).  Captain Brown was visibly upset.

I was transferred the following month to central printing as an examiner (processing driver's licenses) which was a demotion in duties (no pay cut[]).  I went from working in the Director's office to working with the public.  I did this for 111/2 months.  On October 1, 2015, I was transferred to emergency operations.  In this capacity, I sat in an office with no assignments.  The work that I should have done was given to another employee to perform.  Currently, I report to Lt. James Walker.  He started sending me to the switch board (answering phones) to cover the lunch hours.  On May 17, 2017, Lt. Walker advised me that I was to report to the switch board Monday-Friday, 8:00 a.m. -5:00 p.m.

As a result of being moved so much and not being evaluated, I have missed out on a promotion and CDL overtime pay.

I have not received a performance evaluation since Captain Brown's promotion in 2014, which is also against policy.  Policy states that employees should be evaluated once per year.  I most recently filed a grievance on September 11, 2017, regarding my concerns, to no avail at this point.

I believe that I am being subjected to continuous retaliation as a result of filing a sexual harassment complaint against Captain Brown, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*EEOC Charge of Discrimination* [doc. no. 1-1 pp. 304].

Plaintiff's allegations of retaliation allege a continuing violation, such that her claims are not time-barred.

The employer has not articulated a legitimate reason for Pippins' transfer in 2014 to Central Print or her assignment to the switchboard; but even in the face of the employer's stated reason for Pippins' transfer to Emergency Management in 2015, Pippins has created a fact issue regarding pretext. The timing of both transfers, the testimony of Gillard, assignment to a non-existent position in the Emergency

20

Management Department where help was not needed, taken with the lack of performance appraisals, the back-to-back writeups in September 2015, a questionable write-up placed in her personnel file (that Pippins says she never received), and assignment to a job not performed by MDPS personnel, could conceivably point to a retaliatory motive on the part of the employer, which in the mind of this court, makes summary judgment inappropriate in this case.

"An employee may in some instances survive summary judgment with as little as her prima facie case of discrimination plus evidence contradicting the non-discriminatory reason asserted by the employer, but that is not always enough." *Id.* at 606 (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000)). The factors to be considered in determining whether a plaintiff has established a genuine issue of material fact with respect to pretext include " 'the strength of the prima facie case, the probative value of the proof that the employer's explanation is false and any other evidence that supports the employer's case and that properly may be considered.' " *Id.* (quoting *Reeves*).

The Defendants' motion for Summary Judgment as to Pippins' Title VII claim for retaliation is denied.  Plaintiff may pursue her claim for retaliation under Title VII for any acts which were a part of her charge and of the EEOC investigation, or any acts occurring within 180 days prior to filing her EEOC charge and any retaliatory acts alleged after.[7]

---

[7] In *Gupta v. East Texas State Univ.,* 654 F.2d 411 (5th Cir. 1981), the Fifth Circuit Court of Appeals held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Id.* at 414.

II.     Plaintiff's claims under §1983

In Section 1983 lawsuits, a plaintiff must "establish that the defendant was either personally involved in the deprivation or that [the official's] wrongful actions were causally connected to the deprivation." *Jones v. Lowndes County,* Miss., 678 F.3d 344, 349 (5th Cir. 2012) (quoting *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008)); *Anderson v. Pasadena Indep. Sch. Dist*., 184 F.3d 439, 443 (5th Cir. 1999).  To state a section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Willis Indep. Sch. Dist*., 233 F.3d 871, 874 (5th Cir. 2000).

This court first examines Pippins' contention that she was deprived of her constitutional right to free speech.   A plaintiff must show that the speech in which she engaged or attempted to engage is a matter of public concern.  See *Connick v. Myers,* 461 U.S. 138 (1983) ("when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior").

The official capacity claims against Walker and Fisher also fail because Pippins cannot establish, and does not even allege, that the actions taken by the agency were part of a custom, policy or practice that resulted in deprivation of her constitutional rights. See *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978); *Piotrowski v. City of Houston*, 237 F. 3d 567, 578 (5th Cir. 2001).

A § 1983 equal protection claim requires the same proof and elements as a Title VII claim of racial discrimination.  *Lauderdale v. Tex. Dep't of Criminal Justice, Institutional Div.,*

22

512 F. 3d 157, 166 (5th Cir. 2007) ("inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII."); see also *Lee v. Conecuh Cty. Bd. of Educ.,* 634 F. 2d 959, 962 (5th Cir. Jan. 1981) ("Logic dictates that the *McDonnell Douglas* factors may be used to establish a prima facie case in cases of racially motivated employment discrimination brought under section 1983 whether or not Title VII is used as a parallel remedy.").

Plaintiff also has not averred facts in support of a case for discrimination based on race or sex, other than her retaliation claims.  Under the *McDonell Douglas* framework, Pippins has the initial burden of making a prima facie showing of discrimination based on race or sex.  *Turner v. Kan. City S. Ry. Co.,* 675 F. 3d 887, 892 (5th Cir. 2012).   Plaintiff has not met this burden. Section 1983 actions challenging racial discrimination under the equal protection clause and Title VII disparate treatment cases both require a showing of discriminatory motive, and the nature of a prima facie showing is the same in either case.  *Lee v. Conecuh Cty. Bd. of Ed.,* 634 F.2d 959, 962 (5th Cir. 1981). Pippins has not presented proof that race discrimination and/or sex discrimination motivated the adverse treatment she alleges she received.

For the reasons discussed, summary judgement is granted in favor of Defendants on Plaintiff's § 1983 claims for First Amendment retaliation and violation of her constitutional rights under the Equal Protection Clause, and these claims are hereby dismissed.  Only Plaintiff's claims for retaliation under Title VII and §1983 remain viable.

CONCLUSION

Defendants' Motion for Summary Judgment [doc. no 35] is granted in part and denied in part.  Defendant's motion for summary judgment is granted as to all of Plaintiff's claims other

than her claims of retaliation.  Plaintiff's claims other than her claims for retaliation under Title VII and §1983 are dismissed.  The parties are instructed to confer with the Magistrate Judge within ten days for a trial setting.

SO ORDERED AND ADJUDGED,  this  the 13th  day of April, 2022.

s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE