IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DEBRA PIPPINS**                                                      **PLAINTIFF**


**vs.**                                        **CIVIL ACTION No.: 3:18-CV-541-HTW-LRA**


**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;**
**MARSHALL L. FISHER, CHAIRMAN OF THE**
**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY;**
**AND JAMES WALKER, INDIVIDUALLY**
**AND IN HIS OFFICIAL CAPACITY**                              **DEFENDANTS**


## ORDER

Before this court in the above-styled and numbered action is the Defendant's motion to

enforce settlement against the Plaintiff, who, says the Defendant, voluntarily and intelligently

reached a settlement with the Defendant on June 22, 2022. The Defendant, movant of the instant

motion, is the Mississippi Department of Public Safety ("MDPS"). The Plaintiff is Debra Pippins,

who filed this Title VII[1] action against Defendant on August 14, 2018, alleging causes of action

against: (1) MDPS; and (2) individual defendants. Since June 22, 2022, the date the parties reached

a settlement, the Plaintiff has chosen to renounce that Agreement. Aggrieved over the Plaintiff's

decision, the Defendant herein has filed the instant motion to enforce settlement.

---

[1] Title VII of the Civil Rights Act of 1964 is codified as Title 42 U.S.C. § 2000e *et seq.*  Congress enacted title VII "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which would have fostered racially stratified job environments to the disadvantage of minority citizens*." McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800(1973) (as quoted in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 526 (1993)). Title VII "is central to the federal policy of prohibiting wrongful discrimination in the Nation's workplaces and in all sectors of economic endeavor." *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2522 (2013).

The parties herein attended a Pretrial Conference with the undersigned Judge on June 22, 2022. Previously, this court had endeavored to bring the parties together in settlement on May 27, 2022. That effort was unsuccessful. Nevertheless, on June 22, 2022, this court attempted further efforts The parties agreed to participate in good faith. Guided by the court, the parties indulged in a lengthy effort to reach a settlement. Several times during that effort, Plaintiff met with her lawyer, outside of the presence of the defense counsel. Likewise, several times during the parties' negotiations, the defense counsel asked permission to leave the courtroom to contact her client for a confidential conversation. After much effort and the passage of many hours, the parties announced to the court that a settlement had been reached.

The specific terms of the agreement were as follows: (1) Plaintiff Pippins would release, acquit, and forever discharge all claims she had asserted in this lawsuit against all Defendants (whether former or current); (2) Defendant MDPS would issue a lump sum payment in the amount of $25,000 payable to Law Offices of John M. Mooney, Jr., PLLC, subject to receipt of an appropriately-executed W-9 Form from that entity, an amount specifically intended to cover all damages, attorney's fees, and costs (Ex. A, 5-10); and (3) a one-time $5,000 pay increase to Plaintiff Pippins, effective July 1, 2022, upon approval by the Mississippi State Personnel Board. (Ex. A, p. 8: 15-20).  Both parties agreed to these terms in open court on June 22, 2022 (Ex. A, pp. 8-21).

> This court specifically questioned Plaintiff Pippins about the terms of the settlement:
>
> THE COURT: Okay. The plaintiff is here and so, will the plaintiff please stand? Now did you hear what Ms. Johnson had to say?
>
> MS. PIPPINS: I did.
>
> THE COURT: Okay. And I presume you have discussed this matter with your lawyer?

MS. PIPPINS: I did.

THE COURT: And do you agree with what Ms. Johnson said are the terms of the

settlement?

MS. JOHNSON: That is what the – our agreement is, is that it is contingent on the State

Personnel Board. And that is by law, another state agency has to approve that raise. We

cannot, as a defendant, do it without subject to that state agency.

THE COURT: But you are recommending that $5,000?

MS. JOHNSON: Yes, Your Honor….. (Ex. A, 9-10).

THE COURT: . . . you have to sign a release. Mr. Mooney, do you agree that she is going

to sign her release?

Mr. MOONEY: She will, Your Honor. The caveat, as you've announced, if she doesn't

get the raise, then were back to square one. (Ex. A, 11).

Once the parties endorsed the above terms of the Settlement Agreement, this court

specifically asked Plaintiff if she understood and agreed with these terms. Her answer was "yes".

In accordance with the above terms, defense counsel, on June 27, 2022, forwarded to

Plaintiff's counsel a Settlement Agreement.

On July 13, 2022, the Plaintiff emailed the following to this court:

My name is Debra Pippins and we're in the middle of a Court Settlement Case, that's not
going well. I would like to cancel the Settlement Case and Amend the Case that has been
presented to the Federal Court. Is this possible, before we proceed to trial. There's changes
related to the case that need to be addressed.

Defense counsel points to the Agreement of the parties reached in open court with the

undersigned Judge on June 22, 2022. That Agreement did not address any of the "changes" that

Plaintiff wants to add, as revealed by her lawyer. Plaintiff's counsel now says that Plaintiff desires

to add certain matters relating to her case and her treatment in the workplace of Defendant, such

3

as: extra transfers; removal of her job title; not acknowledging Plaintiff's computer classes and certificates; and adding switchboard duties to her Accreditation duties.

Further, says defense counsel, the Defendant has secured the $5000 pay increase, but before the Plaintiff can receive this money, she must execute a W-9 Form and sign the Settlement Agreement.

According to Plaintiff's counsel, the Plaintiff wants to cancel the settlement, amend her Complaint allegations, and go to trial. Plaintiff's counsel, Mr. John Mooney, has dutifully submitted his client's position, even though Attorney Mooney contends he had no prior knowledge that Plaintiff would send her above email to the court. He says that he has had a number of communications with his client on this matter, but she is adamant in her new position, and wants to continue with her case. Thus, Mr. Mooney says, his client contends that she should not be compelled to sign the "Release and Settlement Agreement", that is the subject of Defendant's motion.

The jurisprudence on this matter is uncomplicated. In the context of Title VII settlement agreement enforcement, courts have taken a different approach than in other contract/settlement enforcement disputes. To be clear, a district court has the inherent power to recognize, encourage and, when necessary, enforce settlement agreements reached by the parties. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir.1994). The interpretation and validity of a release of claims under Title VII is governed by federal law, and this court applies the totality of the circumstances test adopted by the Fifth Circuit to determine the validity of an agreement between the parties. *Smith v. Amedisys Inc.* 298 F.3d 434, 441 (5th Cir.2002). See also *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207 (5th Cir. 1981) (where settlement issue arises in context of a Title VII employment suit, federal courts are competent to determine whether a settlement exists without

resort to state law, given the federal source of the litigants' rights and that application of state law might hamper the congressional scheme and policy involving Title VII).

Under federal law, agreements to settle Title VII claims must be entered into voluntarily and knowingly; however, such settlements are not required to be reduced to writing and oral settlement agreements are enforceable. *Harmon v. J. Pub. Co.,* 476 F. App'x 756, 757 (5th Cir. 2012). Finally, the party who attacks a settlement must bear the burden of showing that the contract is invalid. *Mid–South Towing Co. V. Har–Win, Inc.* 733 F.2d 386, 392 (5th Cir.1984) (citing *Strange v. Gulf and South American Steamship Company,* 495 F.2d 1235, 1237 (5th Cir. 1974)).

The agreed terms of the Settlement Agreement were read into the record. Plaintiff acknowledged that she understood those terms. She further stated that she agreed to those terms. During the course of negotiations, she conversed often with her attorney. The terms in the proposed Agreement are exactly in line with the terms agreed upon in open court. Federal law applies, and the circumstances surrounding this particular settlement agreement meet those standards, leaving this court with the authority to enforce the agreement.

Plaintiff has not articulated any basis for this court to set aside the Settlement Agreement, which Plaintiff reached voluntarily and knowingly. This court, therefore, hereby enforces the settlement, and requires Plaintiff and her counsel to execute the "Release and Settlement Agreement".  Defendant's Motion to Enforce Judgment [Docket no. 78] is GRANTED.

SO ORDERED this the 6th day of October, 2022.

/s/HENRY T. WINGATE
U.S. DISTRICT COURT JUDGE